United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BABY FOOD PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>ALL ACTIONS | Case No. 24-md-03101-JSC<br><br>**ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 615, 616, 728 |

In this multidistrict litigation ("MDL"), Plaintiffs allege, through their guardians *ad litem*, that they developed autism spectrum disorder ("ASD") and attention-deficit hyperactivity disorder ("ADHD") from consuming certain of Defendants' baby food products. Specifically, they contend the levels of lead and arsenic present in Defendants' baby food caused their injuries. Following a multi-day *Daubert* hearing, the Court granted Defendants' motions to exclude the testimony of Plaintiffs' general causation experts. *See In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2026 WL 559857, at *1 (N.D. Cal. Feb. 27, 2026). Identifying various deficiencies in the proposed testimony, the Court determined Plaintiffs had not met their burden under Federal Rule of Evidence 702.

Defendants move for summary judgment, arguing Plaintiffs have not presented admissible evidence of general causation—an essential element of their toxic tort claims. (Dkt. No. 728.[1]) Plaintiffs oppose. (Dkt. No. 738.) Having considered the parties' submissions, and with the benefit of oral argument held on August 13, 2026, the Court **GRANTS** Defendants' motion for summary judgment. After suitable discovery on general causation, Plaintiffs have not identified

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

general causation evidence sufficient to support their claims.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on a "claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when the pleadings, discovery, and affidavits show there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

"A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)). To satisfy its initial burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Id.* at 1106. If the moving party has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Id.* "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996).

**DISCUSSION**

To efficiently steer this MDL, the Court employed a phased approach to discovery, beginning with general causation. "'Generic causation' has typically been understood to mean the capacity of a toxic agent . . . to cause the illnesses complained of by plaintiffs. If such capacity is established, 'individual causation' answers whether that toxic agent actually caused a particular

plaintiff's illness." *In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d 1124, 1129 (9th Cir. 2002) (citations omitted). For general causation, the relevant inquiry is "whether exposure to a substance for which a defendant is responsible, . . . at the level of exposure alleged by plaintiffs, is capable of causing a particular injury or condition in the general population." *Id*. at 1133. This differs from "individual causation," which "refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." *Id*.; *see also Engilis v. Monsanto Co.*, 151 F.4th 1040, 1045 (9th Cir. 2025) ("In a 'toxic tort claim for physical injuries,' a plaintiff must 'show that he was exposed to chemicals that could have caused the physical injuries he complains about (general causation), and that his exposure did in fact result in those injuries (specific causation).'" (citations omitted).). Though general causation does not inquire as to any individual plaintiff in the MDL, Plaintiffs must establish a causal relationship between their injuries and the alleged toxic heavy metals in baby food, at "levels people realistically may have experienced." *Hardeman v. Monsanto Co.*, 997 F.3d 941, 963 (9th Cir. 2021), *abrogated on other grounds by Monsanto Co. v. Durnell*, 146 S. Ct. 2001 (2026).

Following a joint case management statement from the parties (Dkt. No. 128), at the May 16, 2024 Case Management Conference the Court ruled discovery would begin on general causation. (*See* Dkt. No. 155 at 16 ("I do think that we should move forward on general causation. But we need to figure out what that means, right, so what is the question? So generally, at a very high level, the question is can Defendants' products cause autism spectrum disorder, ADHD, in infants, right, that's at the high level.").) The Court further instructed the parties to meet and confer to either stipulate to the framing of the general causation question, or submit their respective positions for the Court to adjudicate. (*Id*. at 22-23.) Subsequently, at the June 20, 2024 Case Management Conference, the parties argued as to the scope of the inquiry. There, the parties agreed with a two-prong framing of general causation: Plaintiffs needed to show not only that heavy metals can cause ASD and ADHD in young children, but also that the heavy metal levels in Defendants' products could cause the injury through consumption. (*See* Dkt. No. 194 at 38 (COURT: But you agree, don't you, that it's not enough just to show that the heavy metals themselves can damage infants and toddlers? MR. WISNER: 100 percent. It is both questions,

United States District Court
Northern District of California

and that's why our position -- THE COURT: That's all I'm saying. I agree with you.").) Indeed, Plaintiffs' counsel went on to describe their plan for the general causation hearing in which their experts would analyze research on heavy metals and then connect those findings to the levels in Defendants' baby food. (*Id*. at 44-45 (MR. WISNER: What they're going to be able to say is: Based on the levels that we see in these foods, it's possible, it's capable of raising the levels in infants to the levels that it would cause the brain damage and lead to the injury.").)

So, since June 2024, the general causation question has been clear. In connection with the general causation proceedings, Plaintiffs offered expert testimony on both components of the question but ultimately failed to carry their burden under Rule 702. *See In re Baby Food Prods. Liab. Litig.*, 2026 WL 559857, at *1. Absent the testimony of those proposed experts, Plaintiffs have presented no admissible evidence supporting the general causation element of their claims. Therefore, summary judgment is appropriate. *Nissan Fire*, 210 F.3d at 1102; *see also Roundup*, 390 F. Supp. 3d at 1132, n.30 (noting the plaintiffs must "present at least one reliable expert opinion in support of their position" to survive summary judgment); *Engilis*, 151 F.4th at 1055 (affirming summary judgment grant based on exclusion of the plaintiff's general causation expert).

In response, Plaintiffs argue the Court cannot enter summary judgment because there has been no discovery as to the actual heavy metal exposure levels of any individual plaintiff. (Dkt. No. 738 at 8-9.) They note their objection to the Court's bifurcation of discovery into general and specific causation phases, while claiming they were "forced" to create hypothetical exposure menus. (*Id*. at 9.) However, Plaintiffs go on to "concede" the exclusion of the proposed general causation experts would apply in the individual plaintiffs' cases. (*Id*. at 10.) This concession unravels the argument. To start, bifurcation of discovery in toxic tort cases has been upheld by the Ninth Circuit. *See In re Hanford Nuclear Rsrv. Litig.*, 292 F.3d at 1134 ("Given this two-step [causation] process, the district court's decision to bifurcate discovery on issues of causation was reasonable."). Moreover, Plaintiffs must establish both general and specific causation to prevail on their claims. *Id*. They have presented no admissible evidence as to general causation, and they concede the Court's *Daubert* analysis applies in individual cases. That is the end of it.

Plaintiffs' remaining arguments seek to limit the scope of the summary judgment order.

First, Plaintiffs advance a strained reading of the Court's *Daubert* analysis, specifically that "[t]he Court did not bar testimony from any of [the general causation] experts based on any consideration other than temporality." (Dkt. No. 738 at 8.) This assertion mischaracterizes the Order. The Court will not rehash the entirety of its analysis here as the Order speaks for itself. *See generally In re Baby Food Prods. Liab. Litig.*, 2026 WL 559857, at *8 -*14, *16 -*24 (discussing various deficiencies in the proposed testimony under Rule 702). Suffice it to say, the Court rejects Plaintiffs' narrow interpretation of the Court's ruling.

Second, Plaintiffs assert summary judgment cannot be granted as to any plaintiff whose case was direct filed in the MDL after May 23, 2025—the date expert reports were served. They argue subjecting those plaintiffs to the Court's *Daubert* ruling when they did not participate in the exchange of expert reports would violate due process. The Court disagrees. At the March 27, 2025 Case Management Conference, the Court noted that "because we're doing general causation we have to have a deadline for plaintiffs to join so that they're bound one way or the other . . . ." (Dkt. No. 448 at 48.) Thereafter, the Court instructed the parties to meet and confer to propose a date by which any plaintiffs who wished to direct file in the MDL must do so. (*Id.*) During the April 24, 2025 Case Management Conference, the Court revisited the issue and confirmed Plaintiffs could direct file until November 21, 2025. (Dkt. No. 466 at 23-24, 27.) Plaintiffs now construe these statements as discussing only the direct filing date—not whether Plaintiffs would be bound by the Court's *Daubert* ruling. But the Court was clear in March 2025 that the reason the parties must propose a direct filing date was to identify which cases would be bound by such a ruling. To the extent Plaintiffs contend this procedure violates due process, they cite nothing that supports their argument.

The plaintiffs who direct filed in the MDL between May 23 and November 21 did so voluntarily, and they were represented by the same counsel that were appointed to the Plaintiff Steering Committee. Those plaintiffs were on notice through their counsel of the Court's prior case management orders and discussions during the monthly case management conferences. Additionally, the hearing on the *Daubert* motions did not occur until December 2025, and a ruling was not issued until February 2026. (*See* Dkt. Nos. 693-96, 710.) Plaintiffs who direct filed after

service of the initial expert reports had ample opportunity to provide input, or otherwise petition the Court for additional relief prior to the disposition of the motions. Indeed, counsel for many of those direct-filed cases argued during the *Daubert* hearing and could have raised any issues their clients had with the level of involvement in expert discovery at that time. In the MDL context, "[c]oordination of so many parties and claims requires that a district court be given broad discretion to structure a procedural framework for moving the cases as a whole as well as individually, more so than in an action involving only a few parties and a handful of claims." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231–32 (9th Cir. 2006). Given the complexity of such proceedings, "counsel must, for their part, 'collaborate with the trial judge from the outset in fashioning workable programmatic procedures, and thereafter alert the court in a timely manner as operating experience points up infirmities warranting further judicial attention.'" *Id.* at 1232 (citation omitted). Such is the case here. The Court implemented a cut-off date for direct filing to establish the scope of cases bound by general causation proceedings. All plaintiffs who filed by the November 21 cut-off date had the opportunity to participate in the December 2025 hearing. If Plaintiffs wanted additional expert discovery prior to that hearing, counsel could have requested as much. Their failure to do so is not a due process violation.

Plaintiffs' reliance on *Taylor v. Sturgell*, 553 U.S. 880 (2008), to support their due process argument is meritless. There, the Supreme Court considered whether judgment against a plaintiff in a particular Freedom of Information Act suit could preclude a suit brought by a different individual who was not a party to the original case. *Id.* at 885. The Court disapproved the "virtual representation" doctrine as presented there and reversed the Court of Appeals. *Id.* at 904. In the instant case, there is no question of virtual representation. All plaintiffs who direct filed by the November 21 deadline were parties to the litigation prior to any hearing or disposition on the *Daubert* motions. Further, Plaintiffs' counsel participated in the hearing while acting as representatives of those litigants. So, *Taylor*, which considered whether a *non-party* could be bound by a judgment, is inapposite.

Last, Plaintiffs assert summary judgment may only be granted as to claims of injury resulting in diagnosed ASD or ADHD. Some individual plaintiffs have asserted other harms in

United States District Court
Northern District of California

their short-form complaints, such as "IQ loss, language disorders, learning disabilities, or sensory-processing disorders." (Dkt. No. 738 at 15-16.) Given the *Daubert* hearing and ensuing order addressed only expert opinions on general causation of ASD and ADHD, Plaintiffs argue there is no basis for dismissing claims of other harms. Here, the Court agrees. In Pretrial Order No. 15, the Court held "Plaintiffs may include additional injuries beyond autism spectrum disorder and attention deficit hyperactivity disorder. Additional injuries will not be considered within MDL proceedings but may be preserved for adjudication in the transferor court." (Dkt. No. 440 at 2.) As Plaintiffs emphasize, the *Daubert* briefing, and hearing, focused only on the reliability of the proposed experts' opinions about the connection between consumption of Defendants' products and diagnosed ASD/ADHD. Moreover, the Court's order on the *Daubert* motions never mentioned, nor contemplated, general causation evidence on any injury other than diagnosed ASD/ADHD. The Court cannot dismiss claims outside the scope of the general causation inquiry, namely "whether a child's consumption of each Defendant's baby food products is capable of causing ASD or ADHD." *In re Baby Food Prods. Liab. Litig.*, 2026 WL 559857, at *4.

Defendants contend Plaintiffs abandoned their claims as to any other neurological injury, much like they abandoned their claims based on exposure to mercury or cadmium. *See id*. at *1 n.1 (noting Plaintiffs had failed to offer any evidence as to cadmium and mercury and therefore abandoned any theory of causation related to those alleged contaminants). Not so. The reason for the absence of proposed expert testimony on other neurological harm is because the Court and the parties framed the general causation inquiry in this MDL based on diagnosed ASD and ADHD. Plaintiffs present no evidence on other neurological harm because no discovery was permitted on that question. Just as Plaintiffs err in seeking to narrow the effect of the Court's *Daubert* order, Defendants cannot unduly expand it.[2]

## CONCLUSION

For these reasons, Defendants' motion for summary judgment is **GRANTED**. This Order

[2] The Court does not address the arguments as to claims against the Retailer Defendants in the *Watkins* case. The *Watkins* case has been remanded for lack of subject-matter jurisdiction, and accordingly, the Court lacks jurisdiction to resolve that issue.

applies to all cases direct filed, or transferred into, the MDL as of November 21, 2025. Further, this Order applies only to Plaintiffs' claims based on neurological injury that manifested as diagnosed ASD or ADHD. It also does not apply to injuries allegedly caused by consumption of Defendants' infant formula. So,

- Summary judgment in Defendants' favor is entered in full in the cases identified on Exhibit A, attached to this Order;
- Summary judgment is entered on all claims, other than claims alleging injuries from Defendants' infant formula products or claims alleging injuries other than ADHD or ASD in the cases identified on Exhibits B and C, attached to this Order; and

In addition, for the cases identified on Exhibits B and C, separate judgment pursuant to Federal Rule of Civil Procedure 54(b) is warranted. Because the general causation question will be different from that already adjudicated in this MDL for claims alleging injury from infant formula, or for claims alleging injuries other than ASD or ADHD, an immediate appeal of the question of whether consumption of Defendants' baby food products is capable of causing ADHD or ASD is appropriate. Indeed, to not enter separate judgment would mean the Ninth Circuit would decide the appeal of the ASD/ADHD general causation question on only some of the cases in which it was decided, generating piecemeal appeals.

Finally, as the Court did not rely upon any of Defendants' proposed expert opinions to resolve this motion (or the Defendants' *Daubert* motions), Plaintiffs' pending motions to exclude Defendants' experts are DENIED AS MOOT, without prejudice. (*See* Dkt. Nos. 615, 616.)

This Order disposes of Docket Nos. 615, 616, and 728.

**IT IS SO ORDERED.**

Dated: October 14, 2026

JACQUELINE SCOTT CORLEY
United States District Judge